## GUSTAFSON v. FRED WOLFERMAN, Inc.
## No. 3438.

District Court, W. D. Missouri, W. D.
July 17, 1947.

Supplemental Opinion Sept. 24, 1947.

See also 6 F.R.D. 503.

Henry A. Riederer, of Kansas City, Mo., for plaintiff.

Caldwell, Downing, Noble & Garrity, of Kansas City, Mo., for defendant.

RIDGE, District Judge.

Defendant, Fred Wolferman, Inc., owns and operates four retail stores in Kansas City, Missouri, and one in Tulsa, Oklahoma, at which it sells at retail all types of high-grade foodstuffs. Prior to May 31, 1942, it owned and operated such a retail establishment in Oklahoma City, Oklahoma, but since that date that establishment has been discontinued by defendant. The main retail establishment owned and operated by defendant is located at 1108 Walnut Street,

in Kansas City, Missouri, in a seven-story building, wholly occupied by defendant. In the basement of said building, the defendant operates a public restaurant known as the "Grillette". On the first, or ground, floor thereof, in addition to a soda fountain at which small luncheons are served, the equipment and merchandise maintained therein by defendant is such as is similarly found in a retail grocery and butcher shop where actual over-the-counter retail sales are made and delivery orders taken from customers. Between the first and second floors, on an intermediate balcony, is a small public restaurant. A formal-sized restaurant known as the "Tiffin Room" occupies the second floor. The kitchen in which foods for the restaurants are prepared and cooked occupies the third floor. The Store Manager's Office, grocery stock-room and rest-room for female employees are located on the fourth floor. On the fifth floor, which is ordinarily not accessible to the public, is located a candy kitchen in which candies sold in defendant's stores, syrups for the soda fountains, mayonnaise and other salad or food dressings are manufactured and produced. No selling of merchandise of any character is carried on on this floor. On the same fifth floor is a refrigerated room used for the storage of cheese, beans and cereals, including those sold generally at retail over the counters and those dispensed as part of the meals through the restaurants. Also on that floor are rest-rooms for use of male employees. On the sixth floor is the bake-shop in which breads, cakes, pies, pastry, etc., are made both for use and consumption in the defendant's restaurants and for sale in defendant's stores, at retail, over the counters. On the seventh floor is the storage room for supplies for the bake-shop; the building maintenance shop; boilers which heat and service the building; and the colored men's rest-room.

All sales of merchandise made by defendant in each store operated by it are exclusively retail sales. Ninety percent in dollar sales value of the sales so made from each store separately, and from all of its stores in the aggregate, are intrastate. Less than 10 percent in dollar sales value in commodities sold at defendant's stores are interstate sales. A certain portion of the products hereinafter referred to as produced, manufactured, processed or concocted by the defendant in its candy kitchen, in Kansas City, Missouri, is handled by it for delivery, use and consumption in States other than the State of Missouri, including Kansas, Oklahoma, and other States, and defendant is to that extent engaged in commerce and the production of goods for commerce between the several States. The merchandise sold by defendant, as well as the goods, ingredients and raw materials used in the production, mixing, or concoction by defendant of candies and foodstuffs produced by it, were and are ordered from the manufacturers, jobbers or wholesalers thereof by the central purchasing personnel of defendant. The commodities so purchased by defendant in the conduct of its business are partly stored in defendant's warehouse and stock-room maintained in conjunction with one of its outlying stores and restaurants, and a part thereof stored in public warehouses belonging to other parties. In one room of the warehouse owned and operated by defendant it operates a coffee blender and roaster, operated by a single employee, in which green coffee beans are blended and roasted for sale in its various retail stores and for consumption in its restaurants. Up until January, 1944, defendant froze ice cream in a room on the third floor in the building at 1108 Walnut Street, above referred to. The mechanical ice-cream freezer was operated by one employee, assisted at times by others. Ice cream so produced was sold over the counter and used in the restaurants in the stores conducted by defendant in Kansas City, Missouri. Some of such ice cream so produced was shipped to defendant's store in Tulsa, Oklahoma, for retail sale. With the advent of OPA ceiling prices of ice cream, defendant, in the spring of 1944, discontinued the freezing and shipment of ice cream. With the removal of the OPA ceilings and since October, 1946, defendant now mixes and freezes its ice cream on a dairy farm owned by it in rural Jackson County, Missouri, for sale through its retail stores and for consumption at its restaurants and soda fountains.

In the bakery on the sixth floor of the building located at 1108 Walnut Street, in Kansas City, Missouri, defendant bakes breads, cakes, pies and pastry both for consumption in its restaurants and for retail sale through its various stores.

Plaintiff, Gustafson, and the other persons named in Paragraph 8, of the Second Amended Complaint, and also Samuel E. Maxwell, an intervening petitioner, were at various times and for various periods from July 27, 1940, to date, employed by defendant in defendant's candy kitchen located on the fifth floor of the store building situate at 1108 Walnut Street, in Kansas City, Missouri. The duties or occupation of plaintiff, and the intervening claimants, consisted exclusively of work in connection with the manufacturing, production, or wrapping, or packaging of candy for retail sale by defendant at defendant's stores, for over-the-counter delivery, or for delivery by delivery vehicles, or by the mails, except that one day of each week most of said parties and the facilities of the candy kitchen were devoted to or occupied by the mixing and production of mayonnaise or other salad or food dressings for use and consumption in defendant's restaurants and also for sale in defendant's stores. The duties of two of such employees, namely, Braxton and Bowles, were those of porters, engaged in the cleaning of utensils and equipment of the candy kitchen and the floors and premises thereof. None of the employees of defendant included as plaintiff or intervening plaintiffs or claimants in this case did, during the time of their employment by defendant, engage in any retail selling of merchandise, and did not work in any other place, or department, of defendant's business enterprise except in the candy kitchen above referred to. Their duties and occupations consisted in mixing, cooking and otherwise making from raw materials various kinds of candies or salad dressings, or the cleaning of the utensils or premises involved.

The dollar value of retail sales made by defendant in all of its stores from 1941 to the first nine months of 1946, ranged from $3,491,213.26 in 1941, to $5,718,718.61 in 1945. In the first nine months of 1946, such sales amounted to $4,811,546.03. As above stated, over 90 percent of all such sales were intrastate in character, the range of percentage being 91.9% in 1945, to 93.5% in 1946.

A specialty item of merchandise sold in defendant's retail stores is Home Made Candies. Such candy is manufactured and produced in the candy kitchen of defendant above referred to. The dollar value of candies manufactured, produced and sold by defendant during the years 1941 to 1946 ranged from $121,391.33 in 1941, to a high of $237,670.19 in 1945. The percentage in dollar value of candies manufactured, produced and sold by defendant to its total retail sales, between the years 1941 to 1946, ranged from 2.42% in 1941, to a high of 3.43% in 1944. In 1941, 22.-20% in dollar value, of the candy manufactured and produced by defendant in Kansas City, Missouri, was shipped to the retail stores of defendant in the State of Oklahoma. 17.50% thereof produced in 1942; 13.74% produced in 1943; and, .64% produced in 1944, were likewise shipped to its stores in said State. Since 1945, none of the candies or mayonnaise produced by defendant in its candy kitchen in Kansas City, Missouri, have been shipped to its stores in Oklahoma. Defendant did, however, in 1945, and the first nine months of 1946, ship to its Tulsa, Oklahoma, store, candies purchased by it from other manufacturers and delivered to defendant's candy kitchen in Kansas City, Missouri, by such manufacturers. The dollar value of purchased candy so shipped amounted to $8,479.32 in 1945, and $3,559 for the first nine months of 1946. Some of the employees of defendant included in this action participated in the wrapping, packaging and shipping of candy from its stores in Kansas City to defendant's store in the State of Oklahoma, in addition to their duties of manufacturing and producing candy for defendant.

At defendant's store at 1108 Walnut Street, Kansas City, Missouri, common entrances both front and back serve all floors or portions of the building. Common passenger elevators serve up to and including the fourth floor. A common freight eleva-

tor located in the rear of the building serves all floors and departments or portions thereof. Maintenance employees and elevator operators serve the entire building. In instances where maintenance employees work on facilities or equipment located or used exclusively in one particular department, their time is, for cost record purposes, charged to that department.

Defendant makes and has made no distinction with respect to complying with the regulations of the Administrator of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., as to the work records of any of its employees, including those employed in the Candy Department and its other employees generally. Plaintiff and the other employees of defendant included in this action were employed in its candy kitchen above described and during the period involved in this action worked varying weekly hours in excess of the maximum number of hours per week allowable under the Fair Labor Standards Act for which they were not compensated at one and one-half times their regular hourly rate of pay by defendant. The hours so worked by said employees and the amount of overtime compensation said employees will be entitled to are alleged in Paragraph 8, of the Amended Complaint, and admitted by defendant in its Answer as being correct, if said employees are held to be within the coverage of Section 7, of the Fair Labor Standards Act, 29 U.S.C.A. § 207.

Plaintiff and the the other employees named in this action charge defendant with violation of Sections 6 and 7 of the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 206, 207, and seek to recover of defendant the amounts they claim they were under paid by reason of such violation, and to recover liquidated damages and attorney's fees as provided in Section 16(b) of said Act, 29 U.S.C.A. § 216(b). Defendant denies any such violation of the Fair Labor Standards Act as claimed by plaintiffs and as a defense to this action urges that it is exempt from the operations of said Act because it is, with respect to all of its employees, a retail or service establishment, the greater part of whose selling or servicing is in intrastate commerce as provided in Section 13(a) (2) of said Act, 29 U.S. C.A. § 213(a) (2). Thus, there is presented for determination the question, whether the employees of defendant who are engaged in manufacturing candy and mayonnaise solely for sale by defendant in its retail food stores above described are within the coverage of the overtime provisions of the Fair Labor Standards Act, supra.

### Reasons for Conclusions of Law

The question thus presented is not one of first impression with this District Court. In 1944, the late Judge Merrill E. Otis, in Walling v. Fred Wolferman, Inc., D.C., 54 F.Supp. 917, 923, unequivocally ruled, in an action instituted by the Administrator of the Wage and Hour Division of the United States Department of Labor, that employees of defendant, employed in its candy kitchen, under a set of facts similar to those here found, were not within the coverage of the overtime wage provisions of the Fair Labor Standards Act, supra, and hence defendant was not subject to be enjoined from violating Section 7 of said Act as there sought by the Administrator. In reaching such decision, the late Judge Otis concluded that the business of defendant, though carried on and conducted in five separate retail stores, one of which was located in the State of Oklahoma, was and is a " 'retail * * * establishment' within the meaning of Section 213(a) (2)" of the Fair Labor Standards Act; hence the employees of defendant employed in its candy kitchen were held "not entitled to be paid at the overtime payment rate established by the statute and regulations." As revealed by the opinion there handed down, the conclusion thus reached was premised in part on the decisions of the sixth Circuit Court of Appeals, in Allesandro v. C. F. Smith Co., 6 Cir., 136 F.2d 75, 149 A.L.R. 382; Walling v. L. Wiemann Co., 7 Cir., 138 F.2d 602, 150 A.L.R. 878; and Walling v. Block, 9 Cir., 139 F.2d 268. At the time the opinion in Walling v. Wolferman, supra, was handed down by this Court, Section 13(a) (2) of the Fair Labor Standards Act, supra, had not received construction by the Supreme Court of the United States, as in Phillips Co. v. Walling, 324 U.S. 490, 65 S.Ct. 807,

808, 89 L.Ed. 1095, 157 A.L.R. 876. In the Phillips case, supra, the Supreme Court decided that a chain store business enterprise composed of 49 retail stores, warehouse and central office, constituted 49 "retail establishments" and a single warehouse "establishment" within the meaning of the provisions of the Fair Labor Standards Act. It is observed that certiorari was granted by the Supreme Court in the Phillips case, supra, because of the conflicting views expressed on the issue there involved by lower appellate courts. In Footnote 1 of the opinion in the Phillips case, it is stated: "The decision below in this case (the Phillips case) is in accord with the reasoning of Walling v. American Stores Co., 3 Cir., 133 F.2d 840, but is in conflict with Allesandro v. C. F. Smith Co., 6 Cir., 136 F.2d 75 [149 A.L.R. 382]; Walling v. L. Wiemann Co., 7 Cir., 138 F.2d 602, 150 A.L.R. 878; and Walling v. Block, 9 Cir., 139 F.2d 268."

The reasoning of the First Circuit Court of Appeals, in the Phillips case, and that of the Third Circuit, in Walling v. American Stores Co., supra, was sustained by the Supreme Court of the United States in Phillips' certiorari proceeding.

■■■ As a consequence of the sense of the opinion in the Phillips case, supra; which is manifestly counter-pole to the reasoning contained in the opinion in Walling v. Wolferman, supra, and the authorities there relied on, by which the conclusion was reached that defendant's business enterprise is a "retail * * * establishment" within the meaning of, and therefore exempt from the overtime provisions of the Act in question; we must proceed to a decision of the issues in the instant action, not in the rationale of Walling v. Wolferman, supra, but as spelled-out in the Phillips case. When the Supreme Court of the United States has spoken in unmistakable language concerning an Act of Congress, a judge of a lower court cannot exercise the right of private opinion as to the meaning of terms of such act. A decision of the highest Court in the Country is controlling on all subsequent lower Federal Court decisions, regardless of how such lower court has previously expressed itself. Federal District Courts are bound by the decisions of the Supreme Court of the United States. Then, too, we believe that the opinion in Walling v. Wolferman, supra, is in conflict with the decision of the Seventh Circuit in Walling v. Goldblatt Bros., 152 F.2d 475. The Federal Circuit Courts constitute a single system for the administration of justice. When one Circuit Court has fully considered and deliberately decided a question, every suggestion of propriety and fit public action demands that it should be followed by District Courts until modified by the Appellate Court of the Circuit in which such District Court is located, or by the Supreme Court of the United States. When a ruling or decision laid down by a District Court is impaired by the decision of any Circuit Court of Appeals, stare decisis does not control the dispostition of a similar ruling in the District.

■■■ In view of the foregoing, we do not believe that the decision of this District Court in Walling v. Wolferman, supra, can be said to be decisive of the issues here submitted to the Court for determination as contended by defendant. Walling v. Wolferman, supra, manifestly is not res adjudicata of the issues in this case. The parties to the instant action were not parties to that action, and, although the factual situations are similar in both cases, they are not identical. "The Fair Labor Standards Act was designed 'to extend the frontiers of social progress' by 'insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.' Message of the President to Congress, May 24, 1934. Any exemption from such humanitarian and remedial legislation must therefore be narrowly construed, giving due regard to the plain meaning of statutory language and the intent of Congress. To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretative process and to frustrate the announced will of the people." Phillips Co. v. Walling, 324 U.S. 490, 493, 65 S.Ct. 807, 808, 89 L.Ed. 1095, 157 A.L.R. 876.

In the Phillips case, the Court held that a chain store business enterprise possessed

"the essential characteristics of both the retailer and the wholesaler"; that the "wholesale functions" of such a business enterprise though integrated with the "retail functions" thereof, were at the same time "physically distinct" from each other, and that employees enagaged in the former "function" were within the coverage of the overtime provisions of the Fair Labor Standards Act; that the warehouse and central office employees of such a store system cannot properly be considered as being employed in "a retail establishment within meaning Section 13(a) (2)" supra. The decision so reached in the Phillips case was not arrived at from only a consideration of the character of the "establishments" there involved but also from the nature of the functions performed in segments of a chain store enterprise. "In a realistic sense, therefore, most chain store organizations are merchandising institutions of a hybrid retail-wholesale nature", the Court said. If such institutions are of that hybrid nature, in an economic or realistic sense, what can be said of one who is engaged in the manufacturing business in conjunction with, or as an integral part of a retail enterprise or establishment? "Production and distribution are different segments of business." Cf. United States v. Silk, 67 S.Ct. 1463, 1468. That being so, then a retailer engaged in manufacturing as a part of his integrated business, is engaged in both the production of goods for commerce as well as the distribution of goods in commerce within the meaning of the Fair Labor Standards Act.

The Fair Labor Standards Act, in unambiguous terms, places all employees "engaged * * * in the production of goods for commerce" within the purview thereof. In Section 3(j) of the Act, the word produced means "manufactured, mined, handled, or in any other manner worked on" and for the purposes of the Act "an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing * * * or in any other manner working on such goods, or in any process or occupation necessary to the production thereof." 29 U.S.C.A. § 203(j).

That the employees of defendant employed in its candy kitchen come within the letter and meaning of the above definition contained in that Act cannot be denied. They produce, manufacture, handle and work on a product and goods, a portion of which admittedly, directly, enters the channels of interstate commerce. If such work was not performed in the same buliding in which defendant conducted one of its "retail establishments" but in a separate establishment there could be no possible basis to contend in this case that such employees were not within the coverage of Section 7 of the Act in question. Ronald Electric Co. v. Walling, 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383. That such employees performed their hours of labor, in such work, in the same building in which defendant conducts one of its "retail establishments" does not exempt them from such coverage of said Act.

We think it clear from the decision of the Supreme Court in the Phillips case, supra, that an employer to be in position to claim exemption from the provisions of the Fair Labor Standards Act, under Section 13(a) (2) thereof, must be "regularly engaged in local retail activities"; that his employees who are engaged in such retail business must be engaged in retailing capacities, as "epitomized by the (employees of the) corner grocery, the drug store and the department store." We think it is also the rationale of said decision that if one is engaged in a retail business and in the "establishment" where such retail activities are conducted, other business activities, that are not of a retail selling character are also carried on, the employees of such an employer who are engaged in such other activities, are not taken out of the coverage of the Fair Labor Standards Act by reason of the exemption allowed in Section 13(a) (2) if they are engaged in work, or labor, on goods that are produced or manufactured for interstate commerce. Walling v. Goldblatt, supra. Because some employees of defendant may not be within the Act, because engaged in retail selling capacities, it does not follow that no employees of defendant can claim the benefits of the Act. If the work performed

by an employee is of a kind substantially the same as it would be if the employee was employed by one whose business unquestionably would come under the coverage of the Act, then such employee is within the coverage of the Act, regardless of the general nature of the employer's business or the exemption allowed in Section 13(a) (2) supra. Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638. The exemption from the Act allowed by Section 13(a) (1) and (2) is as to employees who are engaged in a "retail selling capacity" for a "retail or service establishment." "Retail or service establishment" as used in Section 13(a) (2) of the Act, does not mean "the entire business or enterprise" of an employer but is used in its ordinary sense as meaning a distinct physical place where a retail business is conducted, of a kind within the exemption as described in Phillips v. Walling, supra. So construed, defendant's retail business is conducted in five distinct physical places of business. In the building where one such business is carried on, a manufacturing enterprise, producing goods for commerce is also operated and conducted by defendant. The manufacturing enterprise so carried on by defendant is a segment of defendant's entire business, physically, functionally and economically separated from the retail character of some of its business. That the goods so manufactured by defendant, are exclusively sold by it through its retail departments, does not constitute the manufacturing of such goods a retail activity. That a small portion of the total retail sales made by defendant is derived from merchandise manufactured in that segment of its business is wholly immaterial in determining whether such segment of its business and the employees employed therein are within the coverage of the Act. Mabee et al. v. White Plains Publishing Co., Inc., 327 U.S. 178, 66 S.Ct. 511, 90 L.Ed. 607. "Congress, to attain its objective in the suppression of nation-wide competition in interstate commerce by goods produced under substandard labor conditions, has made no distinction as to volume or amount of shipments in the commerce or of production for commerce of any particular shipper or producer. It recognized that in present day industry, competition by a small part may affect the whole and that the total effect of the competition of many small producers may be great." United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 461, 85 L.Ed. 609, 132 A.L.R. 1430.

In the Goldblatt case supra, it was directly held that central office employees, bakery employees and employees engaged in the drapery shop, of one engaged in the retail sale of merchandise, though performing their work in the same building in which such "retail establishment" was conducted, were engaged in wholesaling and manufacturing functions not of a retail or local character and that as to such employees the employer was not entitled to claim the exemption allowed under Section 13(a) (1) or 13(a) (2) of the Act. In Interpretative Bulletin No. 6, the Administrator of the Wage and Hour Division of the Department of Labor has interpreted the exemption contained in Section 13(a) (2) of the Act in question, as not applying to "an establishment which is engaged in manufacturing operations * * * even though the goods which it manufactures are distributed at retail" (Section 17); and, that "if any department in the store is engaged in manufacturing operations, the exemption applicable to the rest of the store is not applicable to that department." (Section 36). The interpretation so given to the Act by the Administrator thereof is particularly applicable to the charcater of defendant's entire business. Such interpretation is, in the opinion of the Court, consonant with the interpretation given to the Act by the Supreme Court of the United States. Consequently, the interpretations by the Administrators of the Act, "are entitled to great weight." United States v. American Trucking Associations, 310 U.S. 534, 549, 60 S.Ct. 1059, 1067, 84 L.Ed. 1345.

Economically considered, defendant's candy kitchen operations come squarely within the purview of the Fair Labor Standards Act. It is in direct competition with all other candy producers engaged in interstate commerce. The price that defendant charges for candy manufactured by it is affected by the cost of production. The retail price at which such candy is sold in interstate commerce has a distinct

relation to the price of other candies manufactured, produced and sold in such commerce. Though defendant claims that its candies are distinct in quality, which claim may be admitted, yet the evidence reveals that in the manufacture thereof the same process is used as is used by all other large manufacturers of candy. The purpose of the exemptions contained in Section 13(a) (2) of the Act was to allow an exemption to "local retail establishments" not manufacturers who use a universal means of manufacturing or processing goods for commerce. Manufacturing is not incidental to the retail sale of commodities. It is the production of goods in a different segment of the economic life of the Country, than the distribution or sale of goods at retail. Manufacturing or processing is not within the exemption of Section 13(a) (2) of the Fair Labor Standards Act, supra. In view of what has been said, we make the following Conclusions of Law:

I. The burden of proof is on defendant to show that its entire business enterprise is a "retail establishment" within the meaning of Section 13(a) (2) of the Fair Labor Standards Act and therefore exempt from the provisions of Sections 6 and 7 of said Act. This defendant has not done.

II. The manufacturing business conducted by defendant in its candy kitchen located in the building in which it also operates a "retail establishment" and the employees engaged in the production and manufacturing of candies for defendant are not within the exemption contained in Section 13(a) (1) or 13(a) (2) of the Fair Labor Standards Act.

III. The plaintiff herein and all of the employees referred to in Paragraph 8 of the Second Amended Complaint, and the intervening plaintiff, Samuel E. Maxwell, who have been engaged for more than forty hours a week in the manufacturing and production of candy in defendant's candy kitchen, are within the coverage of Section 7 of the Fair Labor Standards Act and are entitled to be paid one and one-half times their regular rate of pay for such work.

IV. The amount of the overtime compensation allowed to the employees involved in this action is the amount designated in plaintiff's petition, admitted by all interested parties to be the correct computation of overtime for said employees if they are held to be under the coverage of the Act. Said employees shall recover of defendant double the amount found to be due and owing to them for unpaid overtime compensation as above stated, together with an attorney's fee in the sum of $2,500, which the Court finds to be a reasonable allowance to plaintiff's attorney for the bringing and prosecution of this action.

It is so ordered.

Let judgment be entered accordingly; counsel prepare judgment entry.

### Supplemental Opinion.

After the filing of findings of fact and conclusions of law herein, defendant filed motion for permission to reopen this case and to file an amended answer or supplemental pleading. What defendant sought by said motion was to present to the Court "good faith" defenses made available to employers in the Portal-to-Portal Act of 1947, May 14, 1947, c. 52, § 1, 61 Stat. 84, Title 29 U.S.C.A. § 258. Said Act of Congress having become effective since the trial and submission of this cause, such motion was sustained pursuant to the provisions of Section (d) of Rule 15, Federal Rules of Civil Procedure, 28 U.S.C.A. following 723c.

In sequence of the order so entered, defendant filed supplemental answer, setting forth what it terms its Fourth and Fifth Defenses; thereafter, evidence was introduced by the parties, limited to the two "good faith" defenses set forth in said pleading. The Fourth Defense is premised on Section 9, and the Fifth Defense on Section 11, of the Portal-to-Portal Act of 1947, 29 U.S.C.A. §§ 258, 260, supra.

The Fourth Defense is to the effect that the Administrator of the Wage and Hour Division of the United States Department of Labor instituted in this Court on December 29, 1943, an action to compel compliance by defendant with the provisions of Sections 6, and 7, of the Fair Labor Standards Act, 29 U.S.C.A. §§ 206, 207, with respect to the employees of defendant em-

ployed in its candy kitchen; that in the trial of said case the late Judge Merrill E. Otis, rendered findings and judgment, on April 17, 1944, to the effect that such employees of defendant were exempt from the provisions of the Fair Labor Standards Act by reason of Section 13(a) (2) thereof, 29 U.S.C.A. § 213(a) (2); that the Administrator in said action appealed said judgment and ruling to the United States Circuit Court of Appeals for the Eighth Circuit, but thereafter abandoned said appeal and, with the approval of defendant, procured a dismissal thereof on October 2, 1944. (See Walling v. Fred Wolferman, Inc., D.C., 54 F.Supp. 917; Id., 8 Cir., 144 F.2d 354). It is defendant's contention that the conduct of the Administrator, in abandoning and procuring a dismissal of his appeal in the above action, indicated acquiescence in the ruling made by the trial court in said case, and such conduct constituted an enforcement policy and practice of the Wage and Hour Division of the Department of Labor with respect to the employees of defendant employed in its candy kitchen, within the purview of Section 9 of the Portal-to-Portal Act supra, upon which policy defendant could, and did in fact, rely in good faith in concluding that said employees were not within the coverage of Sections 6, and 7, of the Fair Labor Standards Act, supra. Hence, defendant says, such good faith reliance on its part is a bar to the maintenance of this action and any recovery whatsoever, by plaintiffs herein for the overtime compensation claimed by them.

## Findings of Fact on Fourth Defense.

After dismissal of the appeal in Walling v. Fred Wolferman, Inc., supra, the officers of defendant, relying upon the opinion of the trial court and dismissal by the Administrator of his appeal in that action, concluded that its employees employed in its candy kitchen were not within the provisions of Sections 6, and 7, of the Fair Labor Standards Act, because of the exemption contained in Section 13(a) (2) of said Act; and concluded that said employees were engaged in a "retail or service establishment", the greater part of whose selling or servicing was intrastate in character.

## Conclusions of Law, Fourth Defense.

(1) The Court declares the law to be, that the conduct of the Administrator of the Wage and Hour Division of the Department of Labor, in procuring the dismissal of his appeal in the case of Walling v. Fred Wolferman, Inc., supra, did not thereby constitute such conduct to be an "administrative regulation, order, ruling, approval, or interpretation, (of said Administrator, or) of any agency of the United States, or any administrative practice or enforcement policy of any such agency with respect to the class of employers to which" defendant belonged under the Fair Labor Standards Act, upon which defendant could "in good faith" under Section 9, of the Portal-to-Portal Act of 1947, supra, rely, as a defense in bar of this action.

(2) A decision of a United States District Court is not an administrative regulation, order, ruling or interpretation within the ambit of Section 9, of the Portal-to-Portal Act of 1947.

## Fifth Defense.

This defense relates to the good faith of the defendant under Section 11, of the Portal-to-Portal Act of 1947.

## Findings of Fact.

In 1941, defendant sought from its counsel an opinion "whether the Wage-Hour Act applied" to its stores. May 19, 1941, such counsel rendered to defendant a written opinion, which included, among other things, the following:

"(1) The employees of your stores, both here and in Oklahoma, engaged in the retail end of the business, are not subject to the Wage-Hour Law."

"(2) The employees of your departments manufacturing mayonnaise, candy, ice cream and bakery goods, although not engaged in retail sales, I think, are also exempt from the Act because they are engaged in a retail establishment, the greater part of whose selling or servicing is in intra-state commerce.

"The tendency of the Wage-Hour Division is definitely toward bringing within the Act as many employees as possible. Whether the interpretation of the Act may ultimately be broadened so as to include

within its scope any of the employees which I have indicated in this opinion to be exempt, is, of course, problematical."

The opinion so rendered by counsel was premised upon a consideration of the then reported decisions interpreting the Fair Labor Standards Act; and, Interpretative Bulletin No. 6, issued by the Wage and Hour Division of the United States Department of Labor, and particularly Sections 18, 33, 34, 36, 37 and 41 thereof.

Officers of defendant relied on said opinion, and conferences of the same tenor had with its counsel, and concluded that its employees, employed in its candy kitchen, where mayonnaise and candy, sold by defendant at retail, were processed and manufactured, were not within the provisions of Sections 6, and 7, of the Fair Labor Standards Act, and hence because of such fact did not pay said employees the minimum wage and overtime compensation as required in said sections of such Act.

Prior to the institution of this action, the officers of defendant also relied upon the decision of this United States District Court, in Walling v. Fred Wolferman, Inc., supra, as authority for the conclusion previously reached, that its employees employed in its candy manufacturing department were not within Sections 6, and 7, of the Fair Labor Standards Act.

In December, 1943, certain correspondence was had between agents of the defendant and the United States Department of Labor, relative to the coverage of the "production employees in the several production establishments operated" by defendant under Sections 6, and 7, of the Fair Labor Standards Act of 1938, as amended. Prior thereto and at the time of the institution of the action of Walling v. Fred Wolferman, Inc., supra, an issue existed between the Administrator of the Wage and Hour Division of the United States Department of Labor and defendant as to whether such production employees, as well as other employees of defendant, were within the "coverage or applicability of the Act". Independent of the contentions made by said Administrator, defendant "solely and of its own accord" quit

shipping ice cream manufactured by it to its Tulsa, Oklahoma, store. Thereafter, defendant adhered to its "original position, and in accordance with advice of * * * counsel (and) regardless of possible original coverage or applicability of the" Fair Labor Standards Act to any department of its business endeavor assumed, and now assumes, the position that "all of (its) employees, in every department, are exempt from the minimum wage and maximum hour provisions" of the Fair Labor Standards Act "as being employees of a retail or service establishment."

## Conclusions of Law, Fifth Defense.

 The Court declares the law to be, that the advice and opinion of an attorney as to the applicability of the provisions of the Fair Labor Standards Act to the business of an employer, or a segment thereof, is not in and of itself sufficient to establish "good faith" of the employer under Section 11, of the Portal-to-Portal Act of 1947.

That defendant did not have reasonable grounds for believing that its act in omitting to pay its employees, employed in its candy manufacturing department, minimum wage and overtime compensation was not within Sections 6, and 7, of the Fair Labor Standards Act by any interpretation issued by the Administrator of the Wage and Hour Division of the United States Department of Labor, as expressed in Interpretative Bulletin No. 6.

 Defendant could not accept the advice of an attorney and follow a course of conduct according to its own judgment of the applicability of the provisions of the Fair Labor Standards Act to its business. Defendant is presumed to know the law and whether the provisions of the Fair Labor Standards Act applied to its business and each segment thereof. The advice of an attorney, that the provisions of the Fair Labor Standards Act do not apply to an employer's business is not "reasonable grounds for believing that his act or omission" in not complying with the provisions of said Act was not a violation thereof. To hold otherwise would be to eliminate

198

from actions instituted under the Fair Labor Standards Act any possible recovery of liquidated damages, as specified in Section 16(b) thereof, 29 U.S.C.A. § 216(b).

Let the judgment heretofore ordered be now entered.