## MOSS et al. v. HAWAIIAN DREDGING CO. et al.

Nos. 25299–25302, 26060–26078, 26242, 26243, 26245, 26247, 26535–26537, 26919, 27001.

United States District Court
N. D. California, S. D.

March 31, 1949.

Gladstein, Andersen, Resner & Sawyer and Richard Gladstein, all of San Francisco, Cal., for plaintiffs.

H. G. Morison, Asst. Atty. Gen., Frank J. Hennessy, U. S. Atty., of San Francisco, Cal., Edward H. Hickey, Sp. Asst. to Atty. Gen., and Marvin C. Taylor, Sp. Atty., Department of Justice, of Washington, D. C., for defendants.

Brobeck, Phleger & Harrison, Gregory A. Harrison, and Robert E. Burns, all of San Francisco, Cal., for Waterfront Employers Ass'n of Pacific Coast, amicus curiae.

GOODMAN, District Judge.

Plaintiffs are approximately 500 longshoremen, known as "walking bosses," and

approximately 700 marine terminal warehousemen, who, in 32 cases consolidated for trial, seek recovery from their employers of certain alleged unpaid overtime wages pursuant to § 16(b) of the Fair Labor Standards Act of 1938. 29 U.S.C.A. § 201 et seq.

Suits were instituted on behalf of the warehousemen in November of 1945 and related, so far as the claims for payment of overtime are concerned, to the period beginning in November of 1942. Suits on behalf of the longshoremen "walking bosses" were filed in the summer of 1946 and related to a period commencing in June of 1943.

By the time the cases came to trial in May of 1947, the Portal-to-Portal Act of 1947, 29 U.S.C.A. § 251 et seq., had become effective and the defendants, with the consent of the Court, amended their answers to plead the special defenses provided for in Sections 9 and 11 of that Act.[1] At the trial, the main issue litigated was whether or not defendant employers had paid the plaintiffs overtime compensation according to the formula set forth in § 7[2] of the Fair Labor Standards Act. Defendants contended that the term "regular rate" in § 7(a) (3) meant contract "straight time" rate. The plaintiffs contended that the term "regular rate" must be determined factually by dividing the total compensation received by the total number of hours worked. Evidence was also received at the trial with respect to the special defenses presented under §§ 9–11 of the Portal-to-Portal Act. Upon the conclusion of the trial in June of 1947, the cause was submitted on briefs to be filed. Respective counsel thereafter obtained, upon stipulation, from time to time, orders extending the time for the filing of briefs, partly for the reason that Bay Ridge Co. v. Aaron, 334 U.S. 446, 68 S.Ct. 1186, which involved the precise question of the meaning of the term "regular rate" of pay, had reached and was being considered by the Supreme Court. On June 7, 1948, the Supreme Court decided the Bay Ridge case and upheld the contention of plaintiffs in this case as to the meaning of "regular rate" of pay. Counsel then proceeded to file further briefs with respect to the special defenses in these cases. Thereafter, plaintiffs moved the Court to reopen the cause for the pur-

---

[1] Section 9, 29 U.S.C.A. § 258, provides: "In any action or proceeding commenced prior to or on or after May 14, 1947 based on any act or omission prior to May 14, 1947, no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healy Act, or the Bacon-Davis Act, if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any administrative regulation, order, ruling, approval, or interpretation, of any agency of the United States, or any administrative practice or enforcement policy of any such agency with respect to the class of employers to which he belonged. Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that after such act or omission, such administrative regulation, order, ruling, approval, interpretation, practice, or enforcement policy is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect."

Section 11, 29 U.S.C.A. § 260, provides: "In any action commenced prior to or on or after May 14, 1947 to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216(b) of this title."

[2] Section 7, 29 U.S.C.A. § 207, provides: "(a) No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce— * * *

"(3) for a workweek longer than forty hours after the expiration of the second year from such date, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

pose of receiving further evidence upon the subject of the so-called "good faith" defenses. Upon the hearing of the motion, the evidence sought to be received was heard and the Court reserved ruling on the motion. The Court now grants the motion and the evidence presented is admitted.

After a study of the record and of the Congressional proceedings leading to the enactment of the Portal-to-Portal Act and such authorities as are pertinent,[3] I am convinced that the special defenses have been sustained and that the plaintiffs are not entitled to recover.

■ No useful purpose will be served by recounting the evidence on these issues. It is sufficient to say that I find that the defendants who were members of the Waterfront Employers' Association relied in good faith upon the administrative rulings of the Administrator of the Fair Labor Standards Act and in good faith followed the pay practices approved by such rulings.[4] The evidence adduced after the reopening of the cause even more convincingly sustains the contentions of the defendants. This is for the reason that the Administrator, although appealed to on behalf of complaining employees in other parts of the United States, failed to rule in favor of the pay practices subsequently approved by the Supreme Court in the Bay Ridge case.

■ Special consideration was given in these causes, in supplemental briefs, to the question as to whether the act of the employers in obtaining indemnifying agreements from the governmental agencies involved, negatived the claim of good faith reliance upon the administrative rulings. A study of this question satisfies me that the obtaining of the indemnification agreements in no way evidenced any lack of reliance upon the administrative rulings. Such might have been the case, if there had been conflicting administrative rulings. For in that event the obtaining of indemnification agreements would be strong evidence of non-reliance. But here the administrative rulings relied upon were non-conflicting and approved the pay practices followed by the defendants. Hence the obtaining of the indemnification agreements can be said to be no more than good business practice on the part of the defendants.[5]

The evidence is also convincing that there was good faith reliance by the CPNAB,[6] non-members of the Waterfront Employers' Association, upon administrative rulings which approved the pay practices followed by them.

The humanitarian objectives and purposes of the Fair Labor Standards Act have been consistently and unequivocally recognized and approved both by the Congress and the Courts. But this litigation is a species of synthetic after-thought of a kind which obviously motivated Congress in enacting sections 9 and 11 of the Portal-to-Portal Act of 1947.

---

[3] For cases discussing the meaning and application of the term "good faith" as used in sections 9 and 11, see: Rogers Cartage Co. v. Reynolds, 6 Cir., 166 F. 2d 317; Reid v. Day & Zimmerman, D. C., 73 F.Supp. 892, affirmed, 8 Cir., 168 F.2d 356; Jackson v. Northwest Airlines, D.C., 76 F.Supp. 121; Kerew v. Emerson Radio & Phonograph Corp., D. C., 76 F.Supp. 197; Burke v. Mesta Mach. Co., D.C., 79 F.Supp. 588; Bauler v. Pressed Steel Car Co., D.C., 81 F. Supp. 172; Gustafson v. Fred Wolferman, Inc., D.C., 73 F.Supp. 186.

[4] The ruling mainly relied upon by defendants was contained in a letter addressed by Miss Dorothy Williams, Regional Attorney for the Wage and Hour Division of the Department of Labor, under date of Dec. 6, 1938, to the Industrial Association of San Francisco, in response to an inquiry made by the Association on behalf of waterfront employers, in which the categorical statement was made that overtime compensation should be calculated on the basis of a percentage of the "straight time" rate of compensation.

[5] This precise question was the subject of Congressional discussion. See Congressional Record, Feb. 27, 1947, Vol. 93, pp. 1566 and 1569; May 1, 1947, Vol. 93, pp. 4502, 4516, 4517, and 4577. Cf. Jackson v. Northwest Airlines, D.C., 76 F.Supp. 121.

[6] CPNAB is descriptive of certain defendants who, as a group, were "Contractors, Pacific Naval Air Bases," engaged in the construction of naval air bases in the Pacific under Navy contracts.

In view of the disposition of the cause here made, there is no need to decide the issue raised as to the alleged "executive" status of the "walking bosses."

Judgment will go for defendants, upon findings to be presented, pursuant to the Rules.