938

ALICEA et al. v. PORTO RICO GAS &
COKE CO.

FIGUEROA et al. v. PORTO RICO GAS
& COKE CO.

Civ. Nos. 3282, 4557.

United States District Court
D. Puerto Rico, San Juan Division.

March 29, 1950.

Hipolito Marcano and S. De La Fuente, San Juan, Puerto Rico, for plaintiffs.

C. R. Hartzell, San Juan, Puerto Rico, for defendant.

CHAVEZ, District Judge.

Plaintiffs Donato Alicea, Valentin Figueroa and others, filed suit to recover unpaid minimum wages, unpaid overtime compensation, liquidated damages and attorneys' fees, under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. The case was referred to a Special Master who found that if the defendant company was held to be covered by the Fair Labor Standards Act, plaintiffs were entitled to unpaid minimum wages and unpaid overtime compensation in the total sum of $47,822.94. The findings of the Special Master with modifications not pertinent to the issues involved herein were approved by the Court and the sole question for decision is upon defendant's two special defenses under Sections 9 and 11 of the Portal-to-Portal Act, 29 U.S.C.A. §§ 258, 260.

The statutes, Interpretative Bulletin No. 5, and under the Release of the Wage and Hour Division dated April 20, 1942, pertinent to this cause are as follows:

Section 9, Title 29 U.S.C.A. § 258: "In any action or proceeding commenced prior to or on or after May 14, 1947 based on any act or omission prior to May 14, 1947, no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act, if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any administrative regulation, order, ruling, approval, or interpretation, of any agency of the United States, or any administrative practice or enforcement policy of any such agency with respect to the class of employers to which he belonged. Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that after such act or omission, such administrative regulation, order, ruling, approval, interpretation, practice, or enforcement policy is modified or rescinded or is determined by judicial au-

thority to be invalid or of no legal effect. May 14, 1947, c. 52, § 9, 61 Stat. 88."

Section 11, Title 29 U.S.C.A. § 260: "In any action commenced prior to or on or after May 14, 1947 to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 (b) of this title. May 14, 1947, c. 52, § 11, 61 Stat. 89."

Interpretative Bulletin No. 5, Sec. 11: "There are cases, however, where employees producing goods for use entirely within the State or production can be said to be engaged in a 'process or occupation necessary to the production' of other goods which move out of the State of production, and are, therefore, subject to the Act. This would be true of employees of a tool and die concern which sells all its products within the State for use by a producer of goods for commerce. The legislative history indicates that the Act was intended to apply to employees who make or create tools, dies, patterns, designs, or blueprints, all of which are sold within the state to a local purchaser who uses the tools, dies, designs or blueprints in the production of goods which move in interstate commerce. A much more doubtful case is the case of the small mine selling all its coal in the State to a local manufacturer engaged in the production of goods for commerce, the manufacturer using the coal to heat his plant or to drive his machinery. Are the employees of the mine engaged in a 'process or occupation necessary to the production' of the manufacturer's goods which move in interstate commerce? We feel that we should refrain from taking any position on a case which we believe to be so clearly poised on the border-line between coverage and noncoverage. We feel that no opinion can be expressed on the meaning of the words 'process or occupation necessary to the production of goods' as applied to a case such as this until the courts have at least indicated the broad outlines of the meaning to be given to this phrase."

*Release of April 20, 1942 which reads as follows:*

*"Interpretation of Coverage of Wage-Hour Law is Extended."*

"Guided by recent U. S. appellate court decisions in Philadelphia and New York, L. Metcalfe Walling, Administrator of the Wage and Hour Division, U. S. Department of Labor, today announced extension of the Division's interpretation of coverage under the Wage-Hour Law to employees engaged in producing commodities which, although entirely consumed within the state of manufacture, aid or facilitate the production of other goods for interstate commerce.

"Typical of the employees affected by the broadened application on the law are employees engaged in producing electric energy, steam, fuel or water for use within the state of production by railway terminals or depots, telephone exchanges, radio broadcasting stations, or by manufacturers who in turn produce goods for interstate commerce.

"The decisions upon which the broadened interpretation of coverage is based were handed down in the Third Circuit Court of Appeals, in a case involving the A. B. Kirschbaum Company, Philadelphia, Pa., and in the Second Circuit Court of Appeals, in proceedings against the Arsenal Building Corporation, New York City, N. Y.

"Both companies are building operators leasing space and furnishing services to firms which produce goods for interstate commerce.

"'In the light of the Kirschbaum and Arsenal company decisions,' Mr. Walling said, 'it is the position of the Wage & Hour Division that the Act is applicable to employees engaged in producing fuel, power, or other goods or facilities for use or consumption entirely within the State

by essential instrumentalities of interstate commerce, when such use or consumption aids or facilitates the interstate activities performed by means of such instrumentalities.

"Thus, for example, the Act is applicable to employees engaged in producing electric energy, steam, fuel or water for use within the State by railway terminals or depots, telephone exchanges, radio broadcasting stations, etc. The activities of such employees directly facilitate, aid, and contribute to interstate transportation, transmission and communication, as a result of which such employees in our opinion are themselves properly to be deemed 'engaged in commerce'.

" 'There are cases, moreover, where employees producing goods for use entirely within the State of production can be said to be engaged in a "process or occupation necessary to the production" of other goods which move out of the State of production and are, therefore, subject to the Act. It is our opinion, for example, that the Act applies to employees engaged in producing fuel, power or water, which are used or consumed entirely within the State in the production of other goods for interstate commerce, and in accordance with this principle, the Act is applicable typically to employees engaged in producing power or water, all of which is locally consumed, but some of which is sold to local manufacturers and consumed by them within the State in the production of other goods for interstate commerce.' "

Section 9 requires by its specific terms that defendant plead and prove that the omission to pay plaintiffs according to the Fair Labor Standards Act was (1) in good faith (2) in conformity with and (3) in reliance upon (4) any administrative regulation, order, ruling, approval or interpretation of any agency of the United States, or any administrative practice or enforcement policy of any such agency with respect to the class of employers to which defendant belonged and thus placed the burden of proof specifically upon defendant and that burden must be sustained by defendant with respect to each of the four requirements. Jackson v. Northwest Airlines, D.C., 76 F.Supp. 121; 3 A.L.R. 2d 1186.

" '(2) The test of good faith is an objective one, and not the actual state of mind of the employer.' " " ' "Good faith" cannot be established as a simple fact. It is an ultimate fact—a conclusion to be drawn from all the circumstances.' Although in some instances it has been held to denote honesty of purpose, or the actual existing state of mind without regard to what it should be from given standards of law or reason, in other instances it has been defined as honesty of intention, and freedom from knowledge or circumstances which ought to put the defendant employer on inquiry. 'The defense of "good faith" is intended to apply only where an employer innocently and to his detriment followed the advice as it was laid down to him by governmental agencies without notice that such interpretations were claimed to be erroneous or invalid.' Burke v. Mesta Mach. Co. [D.C., 79 F.Supp. 588]; Colket v. St. Louis Union Trust Co., 8 Cir., 52 F.2d 390; In re Vater et al., D.C., 14 F.Supp. 631; Siano v. Helvering, D.C., 13 F.Supp. 776; Reid v. Day & Zimmerman, D.C., 73 F.Supp. 892; Jackson v. Northwest Airlines, D.C., 76 F.Supp. 121, 126; Gustafson v. Fred Wolferman, Inc., D.C., 73 F.Supp. 186, affirmed as to defense under Sec. 9, Fred Wolferman, Inc. v. Gustafson, 8 Cir., 169 F.2d 759. Interpretative Bulletin, Portal-to-Portal Act, 29 Code Regulations, Chapter 5, Part 790, Sec. 790.19, issued November 1947." Ferrer v. Waterman S. S. Corp., D.C., 84 F. Supp. 680, 686.

" 'In good faith'. Generally, as derived from equity, this phrase connotes a state of mind characterized by honesty of purpose, freedom from intention to be unfair, and the absence of known or readily discoverable facts which would lead to further inquiry." Kam Koon Wan v. E. E. Black, Ltd., D.C., 75 F.Supp. 553, 561.

"Section 9 of the Act is mandatory and much broader in scope than Sec. 11 which merely clothes the court with discretionary powers over the item of liquidated dam-

ages." Rogers Carthage Co. v. Reynolds, .6 Cir., 166 F.2d 317, 320; 3 A.L.R.2d 1185–1186.

The "good faith" required to entitle an employer to avail himself of the provisions of Section 11 has reference to something different from the good faith of employers in actually believing that the employees were exempt from the provisions of the F. L.S.A. Burke v. Mesta Mach. Co., D.C., 79 F.Supp. 588.

■ To the same effect see Reid v. Day & Zimmerman, 8 Cir., 168 F.2d 356, where it was held that it was necessary, in order ·for defendant to avail himself of Section 11, to plead and prove both the actions of good faith that (1) any act or omission giving rights to the action was in good faith and (2) that the employer had had reasonable ground for believing that his act or omission was not in violation of the Fair Labor Standards Act.

A "good faith" defense need not rely on a regulation or order issued by the Wage and Hour Administrator or the Secretary of Labor, for in order to come within the provisions of Section 11, it can be ·based on any administrative action of any one of· the scores of governmental agencies. Burke v. Mesta Mach. Co., supra.

"The mere fact that a defendant erred in applying the facts under the law does not deprive it of the relief offered by Section 11 of the Portal Act since that section, by its very nature and existence, contemplates relief to employers who have erred in determining Wage and Hour liabilities. A defendant may have been acting in good faith where its theory was not entirely unreasonable and that will be regarded as shown by the fact that the National Labor Relations Board adopted defendant's conclusion, even though rather hesitatingly and rejected some of its premises. Officials of the agency and officers of the air corps with whom the defendant was dealing had similarly indicated their opinion. Because defendant's approach to the question may have been unsound as a matter of law, does not make the ground it relied upon unreasonable." Jackson v. Northwest Airlines, D.C., 76 F.Supp. 121; 3 A.L.R.2d 1206.

In its defense under Section 9, defendant relies upon Interpretative Bulletin No. 5 dated December 2, 1938, and the release issued by the U. S. Department of Labor, Wage and Hour Division on April 20, 1942, after the Circuit Court of Appeals for the Third Circuit had decided the case of Fleming v. A. B. Kirschbaum Co., 124 F.2d 567, 571. Defendant also argues that in 1938 employers had no idea of what the Congress meant by the language "occupations necessary for the production of goods for commerce" and the phrase "engaged in occupations necessary for the production etc.", and alleges that the question of coverage or non-coverage under the Act was completely novel and devoid of judicial clarification.

As to the latter argument the same is answered by the Fair Labor Standards Act itself and by the Kirschbaum case, supra.

The word "produced" is defined in Sec. 3(j), 29 U.S.C.A. § 203(j), as follows: "'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State."

The Court in the Kirschbaum case then went on to say: "Thus for the purposes of the act an employee is to be deemed * * * in the production of goods for commerce not only when he has direct physical contact with the goods, but also when he is employed 'in any process or occupations necessary to the production thereof.'" Fleming v. A. B. Kirschbaum Co., supra.

It must be kept in mind that the Kirschbaum case was decided by the Circuit Court of Appeals on December 17, 1941 and affirmed by the Supreme Court of the United States on June 1, 1942. Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L. Ed. 1638.

Interpretative Bulletin No. 5 read alone or in conjunction with the Release of April

20, 1942, was not such a statement as would clearly and affirmatively indicate that the defendant was not covered by the Fair Labor Standards Act. Defendant placed its own interpretation upon Bulletin No. 5 notwithstanding that Bulletin No. 5 refrains from making a ruling, regulation, order, etc.

As to the defense under Section 9 the Court holds that defendant's proof has failed to establish that defendant's omission to pay plaintiff was in good faith, in conformity with and in reliance upon any administrative regulation, order, ruling, approval or interpretation of any agency of the United States or any administrative practice or enforcement policy of any such agency with respect to the class of employers to which defendant belonged. * * *

We now come to defendant's special defense under Section 11. Applying the principles of law hereinabove outlined, the Court feels that there is some merit in defendant's position as to its defense under this section. Defendant asked advice of his attorney and was told in substance that in counsel's opinion defendant did not come under the Act because of the small amount of gas sold to consumers whose products, or part of them, might be exported in interstate commerce. This was on the de minimis doctrine which was held inapplicable in Mabee v. White Plains Publishing Co., 327 U.S. 178, 66 S.Ct. 511, 90 L.Ed. 607, decided on February 11, 1946. Defendant in 1938 after consultation with his attorney and with Mr. Sturgis, the Administrator of the Wage and Hour Division in Puerto Rico, discontinued its sales of tar to points outside of Puerto Rico in the belief that if he so acted he was not covered by the Act. Defendant also testified that he relied upon Bulletin No. 5. However, as stated heretofore the matters covered in Interpretative Bulletin No. 5 were set at rest by the case of Fleming v. Kirschbaum, supra. Therefore, after the Kirschbaum case was decided, defendant could not have in good faith relied upon Interpretative Bulletin No. 5, and many of plaintiff's claims found to be due by the Special Master are for periods from May

and December 1938 to July 1945. Defendant relied upon his attorney's advice. However, after Mabee v. White Plains Publishing Co., supra, was decided, defendant immediately complied with the Act and incorporated the 40 cents per hour minimum wage in its collective bargaining agreement.

Defendant's conduct to some extent was influenced by and as a result of his consultation with Mr. Sturgis and by the advice of his attorney and in this particular it cannot be said that the defendant was acting entirely in bad faith.

Therefore, exercising its discretion under Section 11, the Court holds that plaintiffs are entitled to receive as liquidated damages a sum equal to one-fourth of the amount found to be due each plaintiff by the Special Master and to reasonable attorneys' fees.