292 F.2d 645
 James P. MITCHELL, Secretary of Labor, United States Department of Labor, (Arthur J. Goldberg, Secretary of Labor, substituted as party appellant in the place and stead of James P. Mitchell, resigned), Appellant,
v.
SUNSHINE DEPARTMENT STORES, INC., and Harry Sunshine, Appellees.
 No. 18549.
 United States Court of Appeals Fifth Circuit.
 July 26, 1961.
 
 Bessie Margolin, Asst. Sol. of Labor, Jacob I. Karro and Isabelle R. Capello, Attys., U. S. Dept. of Labor, Harold C. Nystrom, Acting Sol. of Labor, Beate Bloch, Atty., U. S. Dept. of Labor, Washington, D. C., Beverley R. Worrell, Regional Atty., Birmingham, Ala., for appellant.
 John L. Westmoreland, Jr., John L. Westmoreland, Atlanta, Ga., for appellees.
 Before TUTTLE, Chief Judge, and JONES and WISDOM, Circuit Judges.
 TUTTLE, Chief Judge.
 
 
 1
 The three actions involved in this case, which were consolidated for trial, were instituted by the former Secretary of Labor under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. One of these actions was brought under Section 17 of the Act to enjoin the defendant, Harry Sunshine,[1] from violating its minimum wage, overtime, and recordkeeping provisions. The other two actions were brought under Section 16(c) of the Act pursuant to the written requests of Evia Purser and Myrtice Reeves, two former employees of Harry Sunshine, to recover unpaid minimum wage and overtime compensation claimed to be due and owing them under the Act.
 
 
 2
 Defendant, who admittedly did not observe the wage standards of the Act, resisted the Secretary's suit on two grounds, the first being that Sunshine's central office and warehouse employees, on whose behalf this action was brought, were not "engaged in commerce" within the meaning of Section 7(a) of the Act, and the second that Sunshine's central office and warehouse constituted a "retail establishment" or part of a "retail establishment" within the meaning of the exemption provided in Section 13 (a) (2) of the Act. The trial court, sitting without a jury, sustained both defenses and entered judgment for the defendant.
 
 
 3
 The basic facts are not in dispute. Appellee, Sunshine, owns and operates five retail department stores in and around Atlanta, Georgia, with a million dollar annual volume of business. The issues in these cases concern the activities of Sunshine's employees in its warehouse, or storeroom, and central office, which occupy the second floor of a building which also houses one of the retail stores. The merchandise to be sold in Sunshine's stores is purchased from all over the world and passes through the warehouse before delivery to the individual stores. Goods are delivered by the carriers to the foot of an elevator, and approximately 85 or 90 percent of the time, are placed on the elevator by the carriers; the remainder of the time they are so placed by Sunshine's warehouse employees. A Sunshine employee then takes the elevator to the second floor, where the cartons are removed from the elevator and placed on or near a table a few feet way. Sunshine's employees then unpack the cartons, remove the individual boxes, check the contents against the invoice or order, and stock them on the table, where they are ticketed with tags showing the retail price at which they will be sold by the individual stores.
 
 
 4
 Most of the inventory is placed in the storeroom without being earmarked or consigned to any of the individual retail stores.[2] The stores submit weekly "want lists" or orders designating the amount and nature of the goods desired by them. The turnover of goods in the storeroom depends upon the sales activity in the retail stores; some goods might be in stock for as long as a year while others might enter and leave the warehouse on the same day. Separate inventories are maintained for each store and the warehouse to ascertain shortages, but for purposes of financial statements a single inventory is maintained.
 
 
 5
 In addition to the duties mentioned above, the warehouse employees assemble and ship the goods to the retail stores. Once a week, merchandise which is damaged or defective is returned to the suppliers by the warehouse personnel. Specifically, as to the Section 16(c) claimants, it appears that these employees were expected to and frequently did unload the elevator and receive the goods, and helped with the other storeroom duties of checking in, pricing and storing the interstate shipments, and returning merchandise to the out-of-state supplier.
 
 
 6
 The duties of the central office employees, with the exception of members of the Sunshine family who do all the ordering for the stores, include handling mail, typing letters, handling invoices, filing purchase orders, maintaining the journal and accounts payable ledgers, keeping sales records matching the receiving report from the storeroom with the invoice to authorize payment for out-of-state merchandise, typing checks for merchandise purchased from all over the world, and typing the orders for merchandise that are not placed by phone or in person.
 
 
 7
 From these facts, the District Court concluded that the central office, the storeroom and the five retail stores they serve constitute a retail establishment that is exempt under 13(a) (2) of the Act, although it indicated that a different conclusion would have been necessitated by the Supreme Court decision in A. H. Phillips, Inc. v. Walling, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095, if the storeroom served a retail store located without the state of Georgia.
 
 
 8
 The court found that the office employees, with the exception of members of the Sunshine family, did not perform "any services in connection with ordering goods, receiving goods, or with the moving of goods in general, to any such extent as would cause such employee to come within the provisions of the Act." The court further concluded that the activities of the office employees, being the usual and customary duties of any retail establishment, are exempt, and therefore it does not matter how much of their time is spent ordering goods, typing orders, paying checks or keeping the records of the retail establishment. It ruled that the only interstate activity in which the warehouse employees engage is that involving the movement of goods from the time they are placed on the elevator on the bottom floor until removed on the second floor onto or near the table a few feet away, and that their activities in this regard are minimal, and therefore cannot be considered an interstate activity covered by the Act. As to the two Section 16(c) claimants, the court below found that, since they only helped unload the elevator occasionally, their activities were too inconsequential to warrant coverage under the Act. In reaching these conclusions, we conclude that the District Court erred.
 
 
 9
 With respect to the question whether the central office and storeroom constitutes an exempt "retail establishment" or part of an exempt "retail establishment," we think this case is controlled by the Supreme Court's decision in A. H. Phillips, Inc. v. Walling, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095, where it was held that the central office and warehouse of a chain store system do not qualify for the "retail establishment" exemption. The fact that the warehouse in Phillips happened to service retail stores located in one or more different states while Sunshine's warehouse and retail stores are all located within the state of Georgia, does not, in our view, call for a different result here. As the Supreme Court stated in Phillips:
 
 
 10
 "In a realistic sense, therefore, most chain store organizations are merchandising institutions of a hybrid retail-wholesale nature. They possess the essential characteristics of both the retailer and the wholesaler. Their wholesale functions, which are integrated with but are physically distinct from their retail functions, are performed through their warehouses and central offices. That fact is the essential key to the problem presented by this case. It serves to make clear the in-applicability of § 13(a) (2) to petitioner's warehouse and central office employees." (Emphasis added.) 324 U.S. at pages 496-497, 65 S.Ct. at page 809.
 
 
 11
 While the Supreme Court mentioned that Phillips' warehouse serviced retail stores located in different states, that fact clearly did not form a basis for the Supreme Court's decision. Indeed, in affirming the decision of the courts below, the Supreme Court accepted the reasoning of the Court of Appeals for the Third Circuit in Walling v. American Stores Co., 133 F.2d 840, in which four warehouses served only retail outlets within the same state. None of the Courts of Appeals has made the distinction drawn by the trial court that the warehouse in Phillips happened to service retail stores located in one or more different states. On the contrary, all have followed the decision in Phillips to hold the exemption provided in Section 13(a) (2) inapplicable to warehouse and office employees servicing a chain of retail stores located within the same state. Walling v. Ritter Foods Stores, 5 Cir., 159 F.2d 35; Mitchell v. Miller Drugs, Inc., 1 Cir., 255 F.2d 574; McComb v. W. E. Wright Co., 6 Cir., 168 F.2d 40, certiorari denied 335 U.S. 854, 69 S.Ct. 83, 93 L.Ed. 402.
 
 
 12
 Since it is apparent that Sunshine's warehouse and central office operates on a wholesale level, physically[3] and functionally apart from the individual retail stores, the warehouse and central office employees do not qualify for the "retail establishment" exemption contained in Section 13(a) (2). A. H. Phillips, Inc. v. Walling, supra; Mitchell v. Bekins Van & Storage Co., 352 U.S. 1027, 77 S. Ct. 593, 1 L.Ed.2d 589; Walling v. Ritter Foods Stores, supra. The trial court's reliance on this Court's decision in Mitchell v. T. F. Taylor Fertilizer Works, 233 F.2d 284, and on the decision of the Court of Appeals for the Fourth Circuit in Bogash v. Baltimore Cigarette Service, 193 F.2d 291, as necessitating a contrary result, was misplaced. These decisions had nothing to do with the type of chain store system under consideration here. Moreover, the court, in Bogash, expressly approved "the ruling that chain store systems combine wholesale as well as retail elements into a single system which must be separated in order that the affirmative provisions as well as the exemptions of the statute may be given effect." 193 F.2d at page 294.
 
 
 13
 Whether Sunshine's central office and warehouse employees are "engaged in commerce" so as to be covered by the Act, requires the resolution of two questions: First, whether any of the services performed by the employees involve interstate commerce, and second, whether any services found to involve interstate commerce constitute a "substantial part" of the employees' total workload. See Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460.
 
 
 14
 With respect to the first question, we believe that it has been answered by the recent decision of this Court in Mitchell v. C & P Shoe Corp., 286 F.2d 109, 111. There it was held that goods shipped to a warehouse servicing a chain of twenty retail stores remained "in commerce" for the purpose of determining coverage under Section 7(a) of the Fair Labor Standards Act until the goods were finally delivered to the individual retail stores. Appellee seeks to distinguish the C & P case on the ground that in that case fifty percent of the merchandise delivered to the warehouse was immediately consigned and shipped out to the individual retail stores, while here, approximately ninety percent of the merchandise remains at the warehouse until it is shipped to the retail stores pursuant to weekly orders sent in by the stores. In our opinion, this factual distinction does not call for a different result. Applying the same test of "practical continuity of movement" as was applied in the C & P case, it seems absolutely clear that there is sufficient continuity of movement of merchandise through Sunshine's warehouse so that the merchandise remains in commerce until it reaches its "final destination" in the retail stores of the chain. The decision below, which was rendered prior to our decision in the C & P case, was therefore erroneous in holding that the merchandise "came to rest" upon reaching Sunshine's warehouse.
 
 
 15
 This being so, it follows that all of the central office and warehouse employees who devote a "substantial part" of their work to the receipt, handling, storage and distribution of the merchandise are "engaged in commerce" within the meaning of Section 7(a) of the Act. Since it is uncontroverted that all of the central office and warehouse employees, including the Section 16(c) claimants, regularly and recurrently performed such services, we hold that these employees are "engaged in commerce" and are therefore covered by the Act. Mitchell v. Royal Baking Co., 5 Cir., 219 F.2d 532; Stewart-Jordan Distributing Co. v. Tobin, 5 Cir., 210 F.2d 427, certiorari denied Stewart-Jordan Distributing Co. v. Mitchell, 347 U.S. 1013, 74 S.Ct. 866, 98 L.Ed. 1136; McComb v. W. E. Wright Co., 6 Cir., 168 F.2d 40, certiorari denied 335 U.S. 854, 69 S.Ct. 83, 93 L.Ed. 402.
 
 
 16
 The judgment is reversed and the case is remanded for further proceedings in the trial court.
 
 
 
 Notes:
 
 
 [1]
 The complaint was subsequently amended to add Sunshine Department Stores, Inc., as a defendant when, at the first hearing, it appeared that this corporation had taken over the stores in question on March 3, 1959. The defendants will hereafter be referred to jointly as "Sunshine."
 
 
 [2]
 It appeared that special and seasonal items are placed in equal portions into individual bins, bearing the names of the stores, to be sent to the individual stores. The trial court found that these items "represented an insignificant portion of the entire stock, and occupied an insignificant portion of the entire store room."
 
 
 [3]
 The fact that one of the five retail stores is located in the same building as the warehouse does not make the physical-separateness principle inapplicable. Walling v. Ritter Foods Stores, 5 Cir., 159 F.2d 35