CREDIT SERVICE, INC., Appellant,

v.

Philip B. FLEMING, Administrator of the Wage and Hour Division, United States Department of Labor et al., Appellees.

No. 22701.

United States Court of Appeals
Fifth Circuit.

Jan. 25, 1967.

**144**

Thomas H. Anderson, Charles J. Crowder, and Shutts & Bowen, Miami, Fla., for appellant.

Bessie Margolin, Assoc. Sol., Robert E. Nagle, Atty., Charles Donahue, Sol. of Labor, Joel Chasnoff, Atty., Dept. of Labor, Washington, D. C., Beverley R. Worrell, Regional Atty., for appellees.

Before TUTTLE, Chief Judge, and BROWN and GODBOLD, Circuit Judges.

TUTTLE, Chief Judge:

This is an appeal from a judgment of the trial court determining that all of the employees of appellant are engaged in commerce within the provisions of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. § 201 et seq., and adjudging appellant in civil contempt to be purged by payment of amounts representing the difference between compensation paid to employees and the required minimum wages under the Act.

The record developed upon the trial warranted a finding by the trial court of the following facts:

Although the action is continuing in the name of Credit Service, Inc., Credit Bureau of South Florida, Inc., hereinafter referred to as Credit Bureau or Company, became the successor in interest to Credit Service, Inc., and is and has been since June, 1957, a Florida corporation engaged in the collection, sale and dissemination both within and without the State of Florida of credit data and credit reports concerning the financial standing, credit history and debt paying reputation of persons applying for credit with various retail stores or companies, financial institutions and credit card companies. O. H. Overholser has been the president of Credit Bureau of South Florida, Inc., and in this capacity has regularly supervised, directed and controlled the business affairs and operation of Credit Bureau and its predecessor Credit Service, Inc.

During the period since June 27, 1962, Credit Bureau has been engaged in the collection of credit information and the transmission thereof to customers, some of them residing outside of Florida, either orally, by telephone communication or by means of written reports. The furnishing of such information to out of state customers occurred regularly and on a continuing basis. Approximately 6% of appellants' annual sales for 1962 were for out of state customers. Approximately 11% of appellants' business in 1963 was with out of state customers. Among the Company's principal customers located outside the State of Florida which regularly obtained credit reports, both oral and written, were American Express Company, New York; Credit Bureau of Greater Kansas City, Kansas City, Mo.; American Oil Company, Atlanta, Ga., and Gulf Oil Company, Atlanta, Ga.

It is not seriously disputed that in the operation of Credit Service Bureau the appellants were substantially engaged in commerce or in the production of goods for commerce within the meaning of the Act. Tilbury v. Rogers, 123 F.Supp. 109, aff'd Tilbury v. Mitchell, p. c. 220 F.2d 757, 5 Cir., 1955, cert. den. 350 U.S. 839, 76 S.Ct. 77, 100 L.Ed. 748. However, the application of the Act must be determined on the basis of the duty performed by the individual employees. A. B. Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638.

One part of the operation was set apart for the so-called "verbal girls," whose duties were to receive requests for credit information by local telephone and obtain it by means of telephone calls, primarily, but not always, from local sources in the Miami area. The information thus obtained was written down on a sheet of paper and forwarded to a typist for preparation of written reports, some of which were destined for out of state delivery. After the report was forwarded, the information collected by the verbal girls became a part of appellants' permanent files and was available for future use should subsequent requests be received for that particular credit subject. In many cases, when the customer (whether within or without the State of Florida) requested immediate advice, the verbal girls would place telephone calls to the customer and give this advice directly to the customer. The verbal girls did not have long distance telephone connections in their area of operation, nor did they actually write any letters for delivery nor did they do any mailing.

In May, 1941, Philip B. Fleming, then Administrator of the Wage and Hour Division, instituted in the district court for the Southern District of Florida, a civil action to enjoin Credit Service, Inc. from violating the minimum wage and overtime requirements of the Fair Labor Standards Act. This action was the source of this present litigation. On May 5, 1941, the trial court entered a consent judgment permanently enjoining Credit Service, Inc. from violating any of the provisions of the Act. Upon application by the Government for a citation for contempt of court for alleged violation of the court's order in 1953, the trial court made a finding Number 4 as follows: "Defendant's Avena, Beach, Collins, Daniels, Demetry, Driane, Hatcher, Jaskula, Pastoriza, Pettennude, Pettit, Sharpe, Smith, Spurling, Villapiano, Acebal and Mitchell, while employed in the verbal report department, took telephone requests from business organizations within the State of Florida, checked existing files, secured additional information from points within the State of Florida, and gave verbal credit information reports to business organizations within the State of Florida." Based on this finding by the court, the trial judge then held "the employees named in Paragraph 4 of the Findings of Fact were not engaged in 'commerce'" within the meaning of the Fair Labor Standards Act of 1938, as amended. The trial court dismissed the motion for adjudication of contempt.

Now, again, on May 19, 1964, the Secretary of Labor further petitioned the court to adjudge Credit Bureau and the president Overholser in civil contempt, to modify and enlarge the judgment in order to change the language of the original judgment with respect to the amounts of the hourly wages, prospectively only, and to restrain and enjoin Credit Bureau and Overholser from witholding payment of back wages found by the court to be due their employees.

There followed a full hearing by the trial court, as a result of which the court made the finding, already stated above, to the effect that the employees of the verbal department, contrary to the finding as to the activities of the girls of that department in 1953, obtained credit information "primarily, *but not always,* from local sources in the Miami area." The Court also found that the information obtained was written down on a sheet of paper and forwarded to a typist for preparation of written reports, "some of which were destined *for out of state delivery.*" Then, too, the findings included a statement that "*the information collected by the verbal girl became a part of defendant-respondent's permanent files and was available for future use should subsequent requests be received for that particular credit subject.*" Moreover, the Court found that "in many cases, when the customer (whether within *or without the State of Florida*) requested immediate advice, the verbal girls would place telephone calls to the customer and give its advice directly to the customer." (All emphasis added.)

There can be no substantial contention now that this business was not engaged

in commerce and in production of goods for commerce. Nor can it be argued, as attempted by appellant, that it is a retail or service establishment and thus exempt. See Western Union Tel. Co. v. Lenroot, 323 U.S. 490, 65 S.Ct. 335, 89 L.Ed. 414, and Public Building Authority of City of Birmingham v. Goldberg, 5 Cir., 298 F.2d 367.

The only serious question presented here is raised by appellant's contention that the earlier finding by Judge Holland, sitting as district judge in 1953, to the effect that the named girls when working in the "verbal department" were not "engaged in commerce within the meaning of the Fair Labor Standards Act of 1938, as amended," was res judicata with respect to the status of the different employees *now* engaged in the "verbal department."

While it is obvious that the principle of res judicata does not apply, since the issue today is the activities of an entirely different group of people from those who were referred to by name in the earlier judgment, we are to consider whether any species of collateral estoppel precludes the new determination on this subsequent hearing. For a discussion of these principles see Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898; United States v. International Building Co., 345 U.S. 502, 73 S.Ct. 807, 97 L.Ed. 1182; Hyman v. Regenstein, 5 Cir., 258 F.2d 502, 509–511; United States v. Burch, 5 Cir., 294 F.2d 1.

■ Here, it is clear from a comparison of the findings of fact made in the Court's 1953 judgment, and the findings of fact made by the trial court in the pending case that nothing said relative to whether the verbal girls were in commerce in 1953 throws any light upon the question whether the verbal girls performing the acts found in 1962 and 1963 are in commerce. Thus, the 1953 decision in no way precludes the ascertainment of the true facts in the present proceedings. What has been done now is that the District Court, in the 1964 proceedings, has found that the appellant has

failed to pay minimum wages as prescribed by the Act to persons which it finds, based on the evidence which it was permitted to credit, brought them within the protection of the law.

The trial court denied the application of the Secretary for an adjudication of criminal contempt and also dismissed the civil contempt proceedings except to the extent necessary to permit the collection by the Secretary for the benefit of the named employees of the amounts by which they had been denied their legal rate of compensation under the Act. It does not well behoove a defendant who has consented to a broad injunction against violation of the Wage and Hour provisions of the Act to say that since the Court found that what certain of his employees were doing in 1953 did not bring them within the Act's protection, he is not required to judge at his peril whether the activities of other employees during an intervening 10 years also failed to meet the standards of engaging in commerce of production for commerce. When the trial court ascertains that, in fact, the activities of these employees do bring them within the protection of the Act, then the least that should be done is that the Secretary be permitted to make recovery of the amount by which the employees have been short-changed in order to make disbursements to them for their protection.

The appellant complains that it had no opportunity to prove at the hearing below that, in fact, the activities of the verbal girls are the same as they were in 1953. We think this to be without merit because Judge Holland indicated by his findings of purely local activity, the basis of his conclusion. Thus, the facts now found differ in essential respects. Moreover, the record shows no proffer of testimony that would support appellant's contention.

Finding no other error in the record, we conclude that the judgment must be affirmed.

GODBOLD, Circuit Judge (dissenting):

In litigation between an employer and the United States government to deter-

mine whether employees, or classifications of employees, are subject to the Fair Labor Standards Act, both the employer and the United States are entitled to have the issues finally determined by a judgment which shall be given the force and effect to which a judgment is entitled under our jurisprudence. The majority opinion gives this employer less than that. I respectfully dissent.

Here the Secretary of Labor brought the employer into Court claiming coverage under the Act, and there was a judicial determination adverse to the Secretary that the Act did not cover a described class of employees (the "verbal girls" employed in the "verbal report department.") The majority allows the Secretary to bring the same employer back into Court at a later time and, in the absence of change in the applicable law and without proof of such change in the facts as will bring coverage into play, to obtain a new judgment that the same classification of employees are covered. This unfortunate result is made more unfortunate because at the time of both adjudications the employer was under an injunction requiring compliance with the Act—the first adjudication was an unsuccessful effort by the Secretary to have the employer cited for contempt, and the second bite was a successful effort.

In 1941 in the United States District Court for the Southern District of Florida the Administrator of the Wage and Hour Division (the predecessor in authority of the Secretary) obtained a consent injunction enjoining a small corporation and its officers and employees from violating the Act.

In 1951 the Secretary petitioned the same Court to adjudicate defendants in contempt for violation of the injunction by failing to comply with minimum wage and overtime provisions of the Act and to order defendants to pay to the employees amounts due them arising out of such violations. The case was heard in 1953, and the District Court found defendants to be engaged in commerce but that 17 named employees in the "verbal report department" were not engaged in commerce.[1] (The 1941 proceedings had recited that the corporation was engaged in "production of goods for commerce" and the Secretary's petition on which the 1953 order was based had alleged it was so engaged, but the 1953 judgment made no findings concerning this.)

The present proceeding was instituted by a petition filed by the Secretary of Labor in May, 1964, dealing solely with periods after June 27, 1962, and asking three types of relief: (1) that defendants be held in civil contempt for violation of the 1941 injunction; (2) modification

---

1. Pertinent parts of the 1953 order are:
"FINDINGS OF FACT
*   *   *   *   *
3. The defendant corporation is, and was at all times material hereto, engaged in the production, transmission, sale and distribution of credit information reports. Certain of these credit information reports are and were written reports that are and were mailed or transmitted to points outside of the State of Florida. Other written reports are and were transmitted to customers within the State of Florida, and the defendants knew or had reason to believe that they would be subsequently transmitted to points outside of the State of Florida. Information for certain reports is and was secured from points outside the State of Florida.
4. Defendant's employees [naming 17 persons] while employed in the verbal report department, took telephone requests from business organizations within the State of Florida, checked existing files, secured additional information from points within the State of Florida, and gave verbal credit information reports to business organizations within the State of Florida.
*   *   *   *   *
CONCLUSIONS OF LAW
1. Defendants were employers engaged in 'commerce' within the Fair Labor Standards Act of 1938, as amended.
2. The employees named in Paragraph 4 of the Findings of Fact were not engaged in 'commerce' within the meaning of the Fair Labor Standards Act of 1938, as amended.
*   *   *   *   *
4. There was no violation of the provisions of the Fair Labor Standards Act of 1938, as amended."
There followed an order of dismissal.

and enlargement of the 1941 injunction to conform to various changes in the Act since 1941; (3) a new injunction or restraint, enjoining and restraining defendants from withholding payment of back wages found by the Court to be due.

This is not a suit by employees to recover back wages under 29 U.S.C.A. § 216(b) or a suit by the Secretary on behalf of employees to recover back wages under § 216(c). The only party authorized to obtain the 1941 injunctive relief was the Secretary (or his predecessor in authority, the Administrator). An employee is not authorized to seek injunctive relief. Bowe v. Judson C. Burns, Inc., 137 F.2d 37 (3d Cir., 1943).

By the prayer that defendants be held in civil contempt the Secretary was asking the Court to enforce the injunction previously obtained and still in effect. In asking that defendants be required to pay employees back wages the Secretary was invoking the power of the District Court to require defendants to purge themselves of contempt by paying the damages caused by their alleged violations of the 1941 injunction; the Secretary could seek such payment at this stage although in the 1941 injunction proceedings he could not obtain a decree for employees' back wages. McComb v. Jacksonville Paper Co., 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599 (1949). In asking for a new restraint on defendants, that they be restrained and enjoined from withholding from employees payment of wages found to be due, the Secretary was not dealing with enforcement of the 1941 injunction. He was proceeding under authority of 29 U.S.C.A. § 217, which was amended in 1961 to give him power to proceed directly, without the written request of employees, to sue for such injunctive relief.[2] Filing by the Secretary under § 217 pre-empts the rights of employees to proceed themselves under § 216. Wirtz v. W. G. Lockhart Construction Co., 230 F.Supp. 823 (N.D.Ohio, 1964).

Thus the case before us is one where no employee is now, or ever was, or ever could be, a party, one which both before and after the 1961 amendments could be brought and enforced only by the Secretary. This is significant in determining the effect of the 1953 proceedings finding these defendants not in violation of the injunction. The parties now are the same as in 1941 and again in 1953. The Secretary is bound by the 1953 determination to the extent that res judicata applies.

We are not dealing with the effect of an administrative determination on a subsequent administrative proceeding before the same body—even there, recognizing that an administrative agency may be enforcing public interest as opposed to private rights, the courts have not hesitated to apply res judicata to enforce repose. United States v. Utah Construction & Mining Co., 384 U.S. 394, 422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966). Nor do we have the case of the effect on a second administrative proceeding of a previous administrative determination which has been reviewed by the courts, where the res judicata effect, if any, attaches to the court's judgment rather than to the administrative decision. [See, e. g., Gulf Land Co. v. Atlantic Refining Co., 113 F.2d 902 (5th Cir., 1940); 2 Am.Jur.2d Administrative Law § 499 (1962)] The question here is the effect of a judicially-entered judgment on a party thereto in subsequent judicial proceedings between the same parties. In such a case res judicata applies to all matters presented, and all matters which might have been presented, in the first proceeding. Lawhorn v. Atlantic Refining Co., 299 F.2d 353 (5th Cir., 1962); Midessa Television Co. v. Motion Pictures for Television, Inc., 290 F.2d 203 (5th Cir.) cert. denied, 368 U.S. 827, 82 S.Ct. 47, 7 L.Ed.2d 30 (1961).

The majority holds res judicata inapplicable because the issue presented "is the activities of an entirely different group of people from those who were re-

---

2. See full discussion of the amendment and the legislative history in Jones v. American Window Cleaning Corporation, 210 F.Supp. 921 (E.D.Va., 1962) and Wirtz v. W. G. Lockhart Construction Co., 230 F.Supp. 823 (N.D.Ohio, 1964).

ferred to by name in the earlier judgment." But those persons have never been either parties or privies to any of this litigation at any stage of its 25-year life.

Crawford Production Company v. Bearden, 272 F.2d 100 (10th Cir., 1959), makes clear that an employee is neither party nor privy to a suit by the Secretary of Labor for an injunction restraining an employer from violating the Act. There an employee, Bearden, sued under § 216(b), for wages and liquidated damages, in the Western District of Oklahoma. Findings of fact and conclusions of law in a prior case in which the Secretary had sought an injunction in the Northern District of Oklahoma against the same employer were introduced over the objection of the employer. As to this the Court held:

"The action in the Northern District of Oklahoma insofar as it sought relief from discrimination against Bearden was brought for his benefit. But, in other respects that action was brought to enforce the Act in the public interest and it cannot be said that Bearden was a party or privy to the action with respect to other issues."

Walling v. Fred Wolferman, Inc., 54 F.Supp. 917 (W.D.Mo.), appeal dismissed 144 F.2d 354 (8th Cir., 1944), a suit by the Administrator of the Wage and Hour Division, held that employees of a candy kitchen were not within the Act. Subsequently employees of the candy kitchen brought suit under § 216(b), Gustafson v. Fred Wolferman, Inc., 73 F.Supp. 186 (W.D.Mo., 1947). The Court held the prior decision was not determinative because the factual situation though similar was not identical and because "the parties to the instant action were not parties to that action." [3]

The effect of the 1953 order as res judicata in a suit by employees is not before us.[4]

If the test is as phrased by the majority, that the people now employed are not the same persons named in the 1953 judgment, then in any case where an employer is under an injunction and it is judicially determined that employees are not covered, the Secretary can re-litigate the issue each time there is a turnover in personnel. Whether turnover of all is necessary, or less than all will be sufficient, we do not know; and, if less than all suffices, we do not know whether those whose status was previously determined and are still employed will be bound by the judgment while new employees are not. We do not know whether the test of different employees operates where the Secretary seeks an injunction and it is denied on grounds there is no coverage, and he makes a second trip to the well on the grounds of personnel turnover.

No one knows better than the federal judiciary the large number of close questions in determining coverage under the Act. How is an employer who is under an injunction obtained by the Secretary to plan his business affairs so as to comply with the injunction—and stay in compliance with the Act, which is what the whole procedure is about—if compliance can be re-litigated by the Secretary each time the names change on the payroll? The problem is sharpened by the fact that the re-adjudication here obtained is not prospective, to guide the employer as to his future conduct, but retrospective, requiring him to pay back wages and subjecting him to penalties for contempt as well, for conducting his affairs in a manner not proved to be different from that previously determined to be not subject to the Act. The answer is, of course, that the 1953 judgment is res judicata, unless

---

3. In its opinion on petition for rehearing in the portal-to-portal pay case, this Court described the effect of the previously entered declaratory judgment as: "[T]he declaratory judgment herein as to what constitutes working time will be res judicata in any controversy that may arise *between the same parties*." Tennessee

Coal, Iron and R. Co. v. Muscoda Local No. 123, etc., 137 F.2d 176 (5th Cir., 1943), aff'd 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949.

4. Under *Gustafson*, and like cases, we think it clear that no employee, in 1953 or 1964 or between, is bound by the 1953 judgment.

the law changes or the conditions of employment so change as to bring the Act into play.

To apply the principle of res judicata to the Secretary in this case of limited scope will not hamper his enforcement duties. The right of the employees to sue under § 216(b) is not affected.[5] Also a rationale based on ease of enforcement collides head-on with the rule of mutuality of estoppel by judgment. If the Secretary, bound only as to named persons, may re-litigate as the payroll changes, the employer may have equivalent right. The sword is two-edged. Rather than aiding enforcement the majority test makes it more difficult. The intervening [1953] determination is not a usual circumstance. However, the same problem arises in a first effort to enforce an injunction as in a second effort—if a determination of coverage, on which the injunction must rest, reaches no further than named persons then employed, can the employer thereafter be in violation for failure to comply with the Act as to any employee who has since been added to the payroll?

The verbal girls involved in the present action may be under the Act if "engaged in commerce" or engaged "in the production of goods for commerce." [§ 6(a) of the Act; A. B. Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638 (1942)].

In 1953 the District Court found verbal girls employed by the defendants were not engaged in commerce. In the present case the District Court did not base its decision on changed duties the performance of which has caused verbal girls employed by defendants to become engaged in commerce.[6] It specifically recognized that in the 1953 proceeding the verbal girls were declared to be exempt from the Act:

"On January 15, 1953, the employees in this department were declared to be exempt under the Act in the suit then pending in this Court referred to hereinabove." (R. 531).

The Court sought to avoid possible effect of the 1953 judgment by holding that notwithstanding such earlier determination the duties performed by all categories of employees of defendants so related to interstate aspects of the operation that all employees were within the Act:

"The business is designed to collect and disseminate credit information and is self-perpetuating since the central files become a storehouse of information available for use in furnishing customers, both within and outside the State of Florida, with up-to-date credit information. Those employees who prepare the written reports, as well as those who disseminate the information by means of telephone, could not function effectively without the material gathered by the verbal girls. *Notwithstanding that the employees in the verbal and file checking department were declared to be exempt under the Act on January 15, 1953, in the suit then pending before this Court brought by the Secretary against these Defendant-Respondents, the duties performed by each of the categories of employees materially assisted in the day-to-day operation of CREDIT BUREAU'S business either directly, in close association with, or in aid of the other employees, and the activities of all of them contributed directly to, or were closely related to, and a part of the interstate aspects of the company's operations*. Therefore, if the operations of Defendant-Respondents constitute the production of goods for commerce within the meaning of the Act, it must follow that all employees fall within the Act's provisions." (R. 533).

---

5. Whether the Secretary could proceed under § 216(c), with consent of employees, or under § 217, as amended, need not be discussed.

6. If the duties of the verbal girls changed they are not insulated from the Act by the fact that the descriptive title given their jobs, and the descriptive title of their department, were the same in 1964 as in 1953.

At R. 536 the Court again made clear that the basis for its decision was the "overall integrated operation" of the business:

> "Simply segregating the employees into different departments or rooms and categorizing them by tasks performed as interstate or intrastate cannot and does not do away with the overall integrated operation of the Defendant-Respondents, and when so considered, it is clear that all of its employees were engaged in commerce and in the production of goods for commerce within the meaning of the Act during the period since June 27, 1962."

The verbal girls were not held under the Act because of their 1964 duties but because of the interstate duties of others plus the integrated nature of the business.

The government was entitled to show, and did show, and the Court found, that verbal girls employed in 1964 performed some duties relating to out-of-state customers. Their 1964 duties, *if substantial enough in relation to their total activity,* would cause them to be "engaged in commerce," but there were no findings as to substantiality.[7] Only a small part of the employer's gross volume came from services furnished to out-of-state customers (6% of a gross of $91,805 in 1962; 11% of a gross of $84,498 in 1963). For the individual employee the test of whether engaged in commerce is:

> "First, whether any of the services performed by the employees involve interstate commerce, and second, whether any services found to involve interstate commerce constitute a 'substantial part' of the employee's total workload." Mitchell v. Sunshine Department

Stores, Inc., 292 F.2d 645 (5th Cir., 1961).

This brings us to consideration of the finding of "integrated operation", the basis for the Court's decision. The 1953 judgment found verbal girls engaged only in intrastate duties but the company to be engaged in both interstate and intrastate work, and held there were no violations of the Act. Either the issue of "integrated operation" was not then raised by the Secretary, or if raised the Court thought the business was not within the integrated operation rule, or that interstate business was too insubstantial. In any event the Secretary is precluded from now asserting integrated operation as a ground for application of the Act, unless he can show that the operation has so changed since 1953 that what was then not sufficiently integrated (or not proven so when it could have been proven) has since become so.[8] As to being engaged in "production of goods for commerce," the Court made no finding on this in 1953, but the issue was open to the Secretary to litigate. If the verbal girls are now so engaged, and what they are now doing is different from what verbal girls were doing in 1953, their activities would bring them within the Act unless—and this is a big "unless"—the goods produced for commerce, and their participation in the production of them by the defendants, are the same as in 1953. If the activities of the verbal girls contributing to production of goods (i. e., maintenance of credit files and preparation of credit reports) were not such as to invoke coverage in 1953 (or the Secretary when he had the opportunity did not litigate the issue of whether such activities were sufficient) then he cannot litigate that matter in 1964 against the same defendant

---

7. Appellants offered evidence of the duties of verbal girls in 1953, which the Court excluded. Such proof could not have changed the 1953 finding quoted above describing duties of verbal girls as wholly intrastate, nor could 1953 duties make 1964 duties any different than they are, nor could the evidence offered shed any light on substantiality of interstate activity in 1964. The exclusion of this evidence was not error.

8. No proof was offered that the essential nature of the operation, or the extent of integration of the business, was any different in 1964 and 1953, except evidence that defendants had sought to carve out and compartmentalize the activities of the verbal girls so as to continue to have the benefit of the 1953 judgment.

**152**

without proof of such change in the law or facts as relieves him of the rule of repose imposed by the doctrine of res judicata.

The majority may feel that because the Secretary is acting in the public interest he is not bound by res judicata, or that the law has so changed that activities not within the Act in 1953 are within it in 1964. But the majority does not stand on either of these grounds.

With res judicata properly applied this case will have few progeny, if any. The Secretary may always show changes in the law or the facts if there be any. And we do not reach the issue whether the rule of res judicata is different for injunctions issued after the 1961 amendment by reason of the grant of additional power to the Secretary to proceed on his own in an injunction case to collect back wages for employees.[9]

This case should be reversed and remanded for a proper determination of the issue of coverage, in which there is given to the 1963 judgment the effect it is entitled.

---

9. We find nothing in the 1961 amendment, granting a new remedy only, to indicate it operates to relieve the Secretary from the res judicata effect of judgments entered before its adoption.