**James D. HODGSON, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**CENTRALIZED SERVICES, INC., a corporation, and C. A. Cloninger, Defendants.**

**Civ. A. No. 2591.**

United States District Court, W. D. North Carolina, Charlotte Division.

Feb. 4, 1971.

Peter G. Nash, Sol. of Labor, Washington, D. C., Beverley R. Worrell, Regional Sol., Atlanta, Ga., Anthony B. Cuviello, Atty., U. S. Dept. of Labor, Atlanta, Ga., for plaintiff.

Frank Patton Cooke, Gastonia, N. C., for defendants.

McMILLAN, District Judge.

This case was tried on the merits in Charlotte on December 1, 1970. The United States was represented by Mr. Anthony B. Cuviello and the defendants were represented by Mr. Frank P. Cooke of Gastonia.

The United States filed the suit under Section 17 of the Fair Labor Standards Act, 29 U.S.C., § 201 et seq. The relief sought embraces injunctive relief, including injunction having the net effect of requiring payment of back wages, if any, which may be found due.

The position asserted by the government is that the defendant Centralized Services, Inc. is an "employer" under Section 3 of the Act; that for the 1967–70 periods in question, under Section 6 of the Act, it should have been paying federal minimum wages to its employees; and that under Section 7 of the Act it

should have been paying overtime compensation.

Section 6(a) in pertinent part reads as follows:

"Every employer shall pay to each of his employees who in any workweek is *engaged in* commerce or in *the production of goods for commerce,* or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:

"(1) not less than $1.40 an hour during the first year from the effective date of the Fair Labor Standards Amendments of 1966, and not less than $1.60 an hour thereafter, except as otherwise provided in this section; * * *." (Emphasis supplied.)

Section 7 of the Act in pertinent part reads as follows:

"Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is *engaged in* commerce or in *the production of goods for commerce,* or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." (Emphasis supplied.)

In addition the United States contends that C. A. Cloninger, president of Centralized Services, Inc. and secretary of M & J Machine Shop, Inc., is a joint employer of at least one of the plaintiffs or that a joint employment exists through his agency, and that time worked in 1969 by Mrs. Joan McCall for both Centralized Services, Inc. and M & J Machine Shop, Inc. should be treated as time worked for one employer for purpose of computing overtime.

The defendants concede in their trial brief that the employees in question are engaged in "the production of goods"

under Section 6(a) and Section 7(a) of the Act, but the defendants contend that these "goods" are not brought into "commerce" under the Act merely because the tax returns prepared by the employees are known to be scheduled for mailing across state lines to the income tax office at Chamblee, Georgia.

The testimony about the basic facts is virtually uncontradicted. Centralized Services, Inc. is a North Carolina corporation with its one office and place of business at Gastonia, North Carolina. It employs three and sometimes four clerical employees throughout the year. During the tax season of three or four months from January until sometime in April, as many as twenty or more temporary employees are employed. The work of these employees consists of interviewing customers; obtaining basic data such as income, dependencies, and deductions; and preparing tax returns. Most of the customers are married couples and according to the evidence most of the wives are gainfully employed. The practice is for the employees to make up the information and supply it to Cloninger, who usually does the final computation and completion of the returns. The returns are then prepared in smooth form, duplicated, and delivered to the customers, who usually take them home and mail them to the appropriate tax authorities.

The North Carolina returns are mailed to the Revenue Department of the State of North Carolina in Raleigh, and the federal returns are mailed to the Internal Revenue Service. Up until 1969 the federal returns were mailed to the Internal Revenue Service in Greensboro, from which office they might find their way through federal channels to other tax offices. Since the beginning of 1969 or thereabouts the federal returns have all been mailed to Chamblee, Georgia.

The defendant did supply pre-addressed envelopes for these mailings, and now and then as a courtesy would mail a return for a customer. The general

rule, however, was that the customers did their own mailing.

During the non-income tax season the employees among other things did bookkeeping, bank statement reconciliation and other fiscal work for about twenty regular clients of Centralized Services, Inc.

Time cards were kept during all the relevant period. However, when the company moved from one location to another in 1968, the time cards up to that date were destroyed.

The total number of income tax customers per year was about six thousand.

The total gross volume of the business of Centralized Services, Inc. never exceeded $70,000 a year.

The business was open to the general public and practically all of it was "walk in" business.

There is no way that the court can imagine that a resale of the service of preparing a tax return could occur.

Virtually all (certainly far more than 75%) of the business of the defendant was derived from North Carolina sources.

On a handful of occasions (not more than ten), tax returns would be mailed to points outside North Carolina, addressed to Gaston County people who were in the military forces.

The United States contends that there was a joint employment relationship involving Mrs. Joan McCall because of the fact that while employed full time by M & J Machine Shop, Inc. in early 1969 she also did some night work at home and in the office for Centralized Services, Inc. This joint employment relationship, if it existed, would result in liability to her for overtime pay, provided she is covered by the Fair Labor Standards Act. The facts on the joint employment issue are that in early 1969 Jack Garrison, the bookkeeper for M & J, resigned. Mrs. McCall, at the request of the president and another officer of M & J, left her full time employment with Centralized Services, Inc. and went

to work on a full time basis as bookkeeper for M & J. Mr. Cloninger, an officer of both corporations, arranged for Mrs. McCall to continue to do some work for her former full time employer, Centralized Services, Inc., at her home and at the office at night. He also arranged for her husband to do some after hours work for Centralized Services. Cloninger also paid Mrs. McCall $1.50 an hour so that she could employ a maid to look after her children during parts of her working time; otherwise she would not have been available. This maid hire at $1.50 an hour for the maid's hourly work was in addition to Mrs. McCall's pay, which was $2.00 an hour.

Any overtime work done for M & J Machine Shop, Inc. by Mrs. McCall was paid to her in full by M & J.

■ Mr. Cloninger was the officer common to both corporations who made all these arrangements with Mrs. McCall. However, the arrangement does not seem to have been an arrangement for mutual benefit of both employers; Mrs. McCall's work for one employer was of no benefit to the other employer and produced no corresponding advantage to the other employer. Cloninger, in hiring for M & J, was not acting directly or indirectly in the interest of Centralized Services, Inc.; and the employers, during the periods when Mrs. McCall was working for each, were completely disassociated with respect to her employment. It is not felt that a joint employment relationship as contended by the government did in fact exist.

The relevant period covered by the complaint is the period from December 12, 1967 to date. The employer's time cards were destroyed for all periods before November 1, 1968.

For the period from December 12, 1967, to November 1, 1968, the government auditors simply took the available records, which were dollars and cents actually paid each week for each employee, and then, upon the basis of an assumed but not admitted rate of pay for each employee, computed assumed hours

worked and assumed amounts of overtime assumed to be due. The court has made no computation of the amounts of overtime and minimum wage liability alleged to be due before the week beginning November 1, 1968, and specifically refrains from finding these potential liabilities to be in the amounts assumed by the government witnesses. The method of computation for this earlier period appears to the court to be rational, but so speculative that the court is unwilling to base any findings of fact upon that evidence without further proceedings as indicated hereafter.

For periods starting with November 1, 1968, the available information appears to have included the hours worked and the rate of pay and the total earnings, so that for those periods accurate computations appear to have been possible.

## CONCLUSIONS OF LAW

■ The original Fair Labor Standards Act of 1938 was a remedial statute designed to prevent the employment of persons in or serving interstate commerce at wages less than the statutory minimum.

■ The later amendments and exceptions such as the dollar volume test and the concept of an "enterprise engaged in commerce" and the "retail or service enterprise" test should be forthrightly but not liberally construed.

■ The preparation of tax returns inevitably to be put in the mails is the "production of goods for commerce." D. A. Schulte, Inc. v. Gangi, 328 U.S. 108, 66 S.Ct. 925, 90 L.Ed. 1114 (1946); Credit Service, Inc. v. Fleming, 372 F.2d 143 (5 Cir., 1967).

■ Although no "resale" could reasonably be had of a tax return and the brain work that went into preparing it, so that the work obviously has no "wholesale" concept, it is quite doubtful that preparing tax returns has the "retail concept" contemplated by Section 13(a) (2) of the Act. Moreover, there was no evidence introduced to show that making out tax returns was *"recognized* as retail sales or services in the particular industry" and therefore the affirmative defense under 13(a) (2) has not been proved by the defendants.

There was no joint employer relationship involving Mrs. McCall or any other employee; her work for each employer must be treated separately.

## ORDER

1. At all times since December 12, 1967, the defendants Centralized Services, Inc. and C. A. Cloninger were subject to and bound by the provisions of the Fair Labor Standards Act.

2. No joint employment relationship existed involving Cloninger and the two corporations as contended by the plaintiff.

3. For periods subsequent to November 1, 1968, the defendants Cloninger and Centralized Services, Inc. are obligated to pay to or on behalf of the various employees listed in Plaintiff's Exhibit 5 the sums for overtime which were computed by the plaintiff's compliance officer, Mr. Robert F. Smith, and listed in detail on Plaintiff's Exhibit 5. In addition, the defendants are obligated to pay on account of the employees whose earnings are computed on Plaintiff's Exhibit 3, the sums computed by the plaintiff's witness, Mr. Smith, for all periods subsequent to November 1, 1968, except that with respect to the witness Mrs. Joan B. McCall these computations shall not include any consideration of compensation of the said Mrs. Joan B. McCall for allowance for maid hire nor for any other compensation paid Mrs. McCall or any other employee similarly situated by or on account of M & J Machine Shop, Inc.

4. For the period from December 12, 1967, to November 1, 1968, counsel for the plaintiff and the defendants are directed to confer and determine whether an agreement can be reached among them as to the amounts that would be payable to various employees if it be assumed that the court is correct in its

determination that the defendants are covered by the Fair Labor Standards Act and that there is some liability for these employees for periods before November 1, 1968. The parties are directed to advise the court by March 1, 1971, whether they have or have not been able to agree on any liability covering the period from December 12, 1967, to November 1, 1968.

5. Counsel for plaintiff is directed to submit an appropriate judgment covering sums due under this order.

6. The defendants are enjoined from future violations of the Fair Labor Standards Act.